UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

GRAYLING TRIGG SMITH,

        Plaintiff,                      Case No. 1:22-cv-978

v.                                          Honorable Paul L. Maloney

LES PARISH et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) In an order (ECF No. 5) entered on October 25, 2022, the Court directed Plaintiff to file an amended complaint within 28 days. The Court received Plaintiff's amended complaint (ECF No. 7) on November 21, 2022.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* amended complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint for failure to state a claim.

**Discussion**

## I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following individuals: former Warden Les Parish, Assistant Deputy Warden/Current Warden Michael Burgess, Doctor Robert Crompton, Nurse Practitioner/Physician Assistant Jennifer Dalton, and Nurses Unknown Briskie and Unknown Mason.

Plaintiff alleges that healthcare staff at ECF "subjected [him] to undue suffering in refusal to treat a known infection." (ECF No. 7, PageID.30.) He contends that the condition became worse "until [he was seen] in an emergency room in serious condition and hospitalized for eleven (11) days." (*Id.*)

Plaintiff contends that on October 16, 2019, Defendant Briskie denied him treatment by refusing to see him even after "staff made [an] emergency call" to the healthcare department. (*Id.*) Plaintiff claims that Defendant Briskie denied treatment "after she had knowledge of condition." (*Id.*) Plaintiff alleges further that Defendant Dalton cancelled Plaintiff's healthcare callout on October 20, 2019, "while being well aware of extreme infection, after kites pleading to be see[n]." (*Id.*)

Plaintiff contends that his condition because "so severe with boils and large knots[, and] one testi[cle] the size of a softball and pain indescribable." (*Id.*) On October 24, 2019, Defendant Dalton "to[ok] it upon herself to perform a surgical procedure and cut into [Plaintiff's] scrotum." (*Id.*) Plaintiff alleges that he "black[ed] in and out" and begged for help until he was given drugs and sent to the local emergency room. (*Id.*) Plaintiff was treated and sent to "MaClaren Urgent Care" in Lansing, where he was treated for an infection and wound made by Defendant Dalton

2

"after surgical procedure performed without consent." (*Id.*) Plaintiff alleges that Defendant Mason assisted Defendant Dalton during the procedure and saw Plaintiff "squirm and suffer[,] pleading for help." (*Id.*, PageID.31.) He contends that Defendant Crompton allowed Defendant Dalton to perform a surgical procedure in "a non[-]sterile environment and later disregard[ed] [a] follow[-]up visit to [a urologist]." (*Id.*)

Plaintiff contends that Defendant Burgess thwarted Plaintiff's attempts to resolve the issue via the grievance procedure by "defaulting on grievance deadlines." (*Id.*) He alleges that Defendant Parish allowed the other Defendants to violate his constitutional rights. (*Id.*)

Finally, Plaintiff alleges that on March 12, 2019, Defendant Dalton switched his pain medication to psychiatric medications. (*Id.*) He asserts that he has no history or need for psychiatric medications. (*Id.*) Defendant Dalton told Plaintiff "it may be phantom pain[,] which [Plaintiff] still experience[s] today." (*Id.*)

Based on the foregoing, the Court construes Plaintiff's complaint to assert Eighth Amendment claims for failing to provide adequate medical care, as well as claims regarding the handling of the grievance process. As relief, Plaintiff asks that the Court "[be] a finder of adjudicated fact and hold these individuals accountable for deliberate indifference to a clearly suffering human being pleading for help." (*Id.*, PageID.32.) He also asks that the Court "not allow clear and obvious attempts [to] thwart [the] adjudication of [the] matter by sabotaging [Plaintiff's] attempt to exhaust." (*Id.*)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

3

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

  A.  **Supervisory Liability Claims Against Defendants Parish and Burgess**

It appears that Plaintiff has named Parish and Burgess as Defendants because of their respective supervisory positions at ECF. Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or

4

vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege any facts suggesting that Defendants Parish and Burgess encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly

5

acquiesced in that conduct. Plaintiff avers only that Defendant Burgess thwarted the grievance process. As noted above, that is insufficient to impose § 1983 liability. *See Shehee*, 199 F.3d at 300. Plaintiff's amended complaint is devoid of facts regarding Defendant Parish's actions. Plaintiff's conclusory allegations of supervisory liability are insufficient to demonstrate that Defendants Parish and Burgess were personally involved in the events described in Plaintiff's complaint. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

### B. Claims Regarding the Grievance Process

Plaintiff also suggests that Defendants Parish and Burgess violated his rights by attempting to thwart the grievance process. (ECF No. 7, PageID.31.) Plaintiff, however, has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants Parish and Burgess's conduct did not deprive him of due process.

Moreover, Plaintiff's First Amendment right to petition the government was not violated by Defendants Parish and Burgess's failures to investigate or act upon his complaints. The First Amendment "right to petition the government does not guarantee a response to the petition or the

right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Finally, Defendants Parish and Burgess's actions (or inactions) have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake,* 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71

(6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff has failed to state a cognizable claim against Defendants Parish and Burgess based on a failure to investigate and failure to act upon his grievances.

### C. Eighth Amendment Claims

Plaintiff's amended complaint primarily concerns his assertions that Defendants violated his constitutional rights by failing to provide adequate medical care.

"The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Rhinehart v. Scutt*, 894 F.3d 721, 736–37 (6th Cir. 2018); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a medical professional's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

An Eighth Amendment claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899; *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir.

8

2008). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The Eighth Amendment's subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart*, 894 F.3d at 738 (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

10

        **1.**        **Defendant Briskie**

Plaintiff's sole allegation against Defendant Briskie is that she denied Plaintiff treatment on October 16, 2019, after staff made an emergency call to the healthcare department. (ECF No. 7, PageID.30.) Plaintiff contends that Defendant Briskie denied care despite having "knowledge of [the] condition." (*Id.*)

Plaintiff's allegations are simply too conclusory to state an Eighth Amendment claim against Defendant Briskie. Plaintiff's complaint is devoid of facts regarding his condition at the time and what he told Defendant Briskie about his condition. Although Plaintiff complains that Defendant Briskie denied treatment, he does not suggest what treatment he required, nor does he suggest any consequences of not receiving treatment that day; consequences that might bolster his claim that treatment was obviously needed. It is "difficult to infer a serious medical need from the facts" as alleged by Plaintiff. *See Larkin v. Schroeder*, No. 2:20-cv-111, 2020 WL 4344985, at *5 (W.D. Mich. July 29, 2020). Plaintiff's allegations, therefore, are insufficient to support an inference that he presented a serious medical need to Defendant Briskie for treatment.

Moreover, even if Plaintiff's condition was a serious medical need, such that Plaintiff adequately alleged the objective component, his allegations fall short with regard to the subjective component. He states only that Defendant Briskie denied treatment and provides no further explanation or facts regarding her denial of medical care. Although it is clear that Plaintiff disagreed with Defendant Briskie's decision to not provide treatment, "a patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah*, 865 F.3d at 372 (citations omitted).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679. There is nothing alleged in the complaint that might

11

distinguish a deliberate indifference to Plaintiff's needs from simple negligence, which *Farmer* has held is not enough for an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence"). Accordingly, Plaintiff's Eighth Amendment claim against Defendant Briskie regarding the failure to provide treatment on October 16, 2019, will be dismissed.

### 2. Defendant Dalton

#### a. March 12, 2019, Incident

Plaintiff vaguely contends that on March 12, 2019, Defendant Dalton switched his pain medications to psychiatric medications. (ECF No. 7, PageID.31.) Plaintiff states that he has no history or need for psychiatric medications, and that Defendant Dalton told him "it may be phantom pain." (*Id.*)

Plaintiff's allegations are too conclusory to state an Eighth Amendment claim against Defendant Dalton with respect to what occurred on March 12, 2019. Although Plaintiff complains that Defendant Dalton switched his medications, he does not suggest why he was taking pain medications, nor does he suggest why Defendant Dalton switched the medications. It is simply "difficult to infer a serious medical need from the facts" as alleged by Plaintiff. *See Larkin*, 2020 WL 4344985, at *5 (W.D. Mich. July 29, 2020). Moreover, Plaintiff's disagreement with Defendant Dalton about what medications to provide "alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah*, 865 F.3d at 372 (citations omitted). Accordingly, Plaintiff's Eighth Amendment claim against Defendant Dalton premised upon her decision to switch Plaintiff's medications on March 12, 2019, will be dismissed.[1]

---

[1] Plaintiff's claim against Defendant Dalton concerning the March 12, 2019, incident may also be untimely. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The

### b. October 20, 2019, Incident

Next, Plaintiff contends that Defendant Dalton cancelled his healthcare callout on October 20, 2019, "while being aware of extreme infection." (ECF No. 7, PageID.30.) As with Plaintiff's claim against Defendant Briskie, Plaintiff does not suggest what treatment he required, nor does he suggest any consequences of not receiving treatment on October 20, 2019. He provides no further facts regarding Defendant Dalton's cancellation of his callout.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679. There is nothing alleged in the complaint that might distinguish a deliberate indifference to Plaintiff's needs from simple negligence, which, as discussed above, *Farmer* has held is not enough for an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835. Accordingly, Plaintiff's Eighth Amendment claim against Defendant Dalton regarding the failure to provide treatment on October 20, 2019, will be dismissed.

### c. October 24, 2019, Incident

Finally, Plaintiff contends that Defendant Dalton violated his Eighth Amendment rights on October 24, 2019. (ECF No. 7, PageID.30.) Plaintiff alleges that his "condition [had] become so severe with boils and large knots[, and with] one testi[cle] the size of a softball." (*Id.*) Plaintiff faults Defendant Dalton for taking it "upon herself to perform a surgical procedure and cut into [Plaintiff's] scrotum." (*Id.*) Plaintiff claims he "black[ed] in and out" and begged for help. (*Id.*) He was subsequently sent to a local emergency room and then urgent care, where he received

---

statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). Even assuming that Plaintiff tried to exhaust his administrative remedies for some time after this incident and, therefore, would be entitled to tolling of the statute of limitations for that period of time, *see Brown v. Morgan*, 209 F.3d 595, 596–97 (6th Cir. 2000), Plaintiff did not initiate this suit until October 19, 2022, well more than three years after March 12, 2019.

treatment for an infection and wound that he claims Defendant Dalton caused without receiving Plaintiff's "informed consent." (*Id.*)

Plaintiff's allegations, taken as true, are insufficient to show deliberate indifference on the part of Defendant Dalton. His amended complaint does not include facts that would plausibly suggest that Defendant Dalton erred in her treatment of Plaintiff's condition. Moreover, even if Plaintiff had done so, "[a medical provider's] errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference." *Rhinehart*, 894 F.3d at 738–39 (citing *Estelle*, 429 U.S. at 107–08). Likewise, a medical provider is not liable under the Eighth Amendment if the medical provider provides reasonable treatment, even if Plaintiff disagrees with that course of treatment or even if the course of treatment ultimately proves harmful. *Id*. Plaintiff is required to plead facts that would plausibly suggest that Defendant Dalton "'subjectively perceived facts from which to infer substantial risk to the prisoner, that [s]he did in fact draw the inference, and that [s]he then disregarded that risk' by failing to take reasonable measures to abate it." *Id*. (quoting *Comstock*, 273 F.3d at 703). Plaintiff has not met that burden. Moreover, Plaintiff's claim that Defendant Dalton did not obtain Plaintiff's informed consent "prior to administering medical treatment do[es] not establish a constitutional violation." *Davis v. Agosto*, No. CIV.A.3:01-CV-180-S, 2002 WL 1880761, at *3 (W.D. Ky. Aug. 15, 2002), *aff'd,* 89 F. App'x 523 (6th Cir. 2004). The Court, therefore, will dismiss Plaintiff's Eighth Amendment claim against Defendant Dalton regarding the treatment provided on October 24, 2019.

### 3. Defendant Mason

Plaintiff alleges that Defendant Mason violated his Eighth Amendment rights on October 24, 2019, by assisting Defendant Dalton and seeing Plaintiff "squirm and suffer pleading for help." (ECF No. 7, PageID.31.) Plaintiff's amended complaint, however, is devoid of any facts from which the Court could infer deliberate indifference on the part of Defendant Mason. As discussed

14

*supra*, Plaintiff has not alleged that Defendant Dalton violated his Eighth Amendment rights during the procedure that was done on October 24, 2019. Thus, it stands to reason that Defendant Mason did not violate Plaintiff's rights during the procedure as well. Accordingly, Plaintiff's Eighth Amendment claim against Defendant Mason will be dismissed.

### 4. Defendant Crompton

Plaintiff first contends that Defendant Crompton violated his Eighth Amendment rights by allowing Defendant Dalton "to perform surgical procedures in a non[-]sterile environment." (ECF No. 7, PageID.31.) As noted *supra*, a claimed constitutional violation must be based upon active unconstitutional behavior." *Grinter*, 531 F.3d at 575–76; *Greene*, 310 F.3d at 899. Plaintiff's amended complaint is devoid of facts from which the Court could even infer that Defendant Crompton was aware of the procedure performed by Defendant Dalton on October 24, 2019. His conclusory allegation is simply insufficient to allege that Defendant Crompton was personally involved in the treatment provided on that date.

Plaintiff also faults Defendant Crompton for "later disregarding [a] follow[-]up visit to [a urologist. (ECF No. 7, PageID.31.) Again, Plaintiff's vague allegation is simply too conclusory for the Court to infer that Defendant Crompton was deliberately indifferent. Plaintiff's complaint sets forth no facts regarding this follow-up visit. The Court cannot discern whether Plaintiff is alleging that Defendant Crompton failed to refer him for a follow-up visit to a urologist or failed to follow any recommendations made by a urologist after Plaintiff had a follow-up visit. Plaintiff's claim boils down to a disagreement with Defendant Crompton about his approach to treatment, which is insufficient to set forth an Eighth Amendment claim. *See White v. Corr. Med. Servs.*, 94 F. App'x 262, 264 (6th Cir. 2004); *see also Mitchell*, 553 F. App'x at 605 ("[A] desire for additional or different treatment does not suffice by itself to support an Eighth Amendment claim."

15

(citations omitted)). The Court, therefore, will dismiss Plaintiff's Eighth Amendment claims against Defendant Crompton.

### 5. Defendants Parish and Burgess

Plaintiff suggests that Defendants Parish and Burgess allowed the other Defendants to violate his Eighth Amendment rights by not providing adequate medical care. However, administrative or custody officials, such as Defendants Parish and Burgess, who have no training or authority to supervise healthcare officials cannot be held liable for the healthcare officials' inadequate care. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (concluding that a custody officer was entitled to rely on the medical provider's judgment); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) (noting that "if a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials). Moreover, non-medically trained prison officials are not deliberately indifferent when they defer to a "medical recommendation that he [or she] reasonably believes to be appropriate, even if in retrospect that recommendation was inappropriate." *McGaw v. Sevier Cnty.*, 715 F. App'x 495, 498 (6th Cir. 2017); *see also Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018); *Stojcevski v. Macomb Cnty.*, 827 F. App'x 515, 522 (6th Cir. 2020) ("[A]n officer who seeks out the opinion of a doctor is generally entitled to rely on a reasonably specific medical opinion for a reasonable period of time after it is issued, absent circumstances such as the onset of new and alarming symptoms." (quoting *Barberick v. Hilmer*, 727 F. App'x 160, 163–64 (6th Cir. 2018) (per curiam))).

Defendants Parish and Burgess cannot be considered deliberately indifferent by deferring to the treatment provided by the other Defendants. There are simply no facts alleged in Plaintiff's amended complaint from which the Court could infer that Defendants Parish and Burgess were subjectively aware of any substantial risk of harm to Plaintiff. The Court, therefore, will dismiss Plaintiff's Eighth Amendment claims against Defendants Parish and Burgess.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   March 8, 2023               /s/ Paul L. Maloney
                                     Paul L. Maloney
                                     United States District Judge